# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| KEYSTONE RX LLC, | : | No. 27 EAP 2020 |
| | : | |
| | : | Appeal from the order of |
| v. | : | Commonwealth Court entered on |
| | : | December 12, 2019 at No. 1369 |
| | : | CD 2018 (reargument denied on |
| BUREAU OF WORKERS' COMPENSATION | : | January 30, 2020) affirming the |
| FEE REVIEW HEARING OFFICE | : | Order entered on September 12, |
| (COMPSERVICES INC./AMERIHEALTH | : | 2018 by the Bureau of Workers' |
| CASUALTY SERVICES) | : | Compensation at No. DSP- |
| | : | 7388753-4. |
| | : | |
| APPEAL OF: | : | ARGUED: April 13, 2021 |
| COMPSERVICES/AMERIHEALTH | : | |
| CASUALTY SERVICES | : | |
| | : | |
| KEYSTONE RX LLC | : | No. 28 EAP 2020 |
| | : | |
| | : | Appeal from the order of |
| v. | : | Commonwealth Court entered on |
| | : | December 12, 2019 at No. 1369 |
| | : | CD 2018 (reargument denied on |
| BUREAU OF WORKERS' COMPENSATION | : | January 30, 2020) affirming the |
| FEE REVIEW HEARING OFFICE | : | Order entered on September 12, |
| (COMPSERVICES INC./AMERIHEALTH | : | 2018 by the Bureau of Workers' |
| CASUALTY SERVICES) | : | Compensation at No. DSP- |
| | : | 7388753-4. |
| | : | |
| APPEAL OF: BUREAU OF WORKERS' | : | ARGUED: April 13, 2021 |
| COMPENSATION FEE REVIEW HEARING | : | |
| OFFICE | : | |

## OPINION

**CHIEF JUSTICE BAER**                **DECIDED: December 22, 2021**

In this workers' compensation matter, the Bureau of Workers' Compensation Fee

Review Hearing Office ("Hearing Office") concluded that, in the fee review setting, a non-

treating healthcare provider, like a pharmacy, cannot challenge a utilization review ("UR") determination that medications prescribed by a treating healthcare provider, such as a physician, but dispensed by the non-treating entity, were unreasonable and unnecessary for the treatment of a claimant's work-related injury. The Commonwealth Court affirmed the Hearing Office's order. However, after reaching this result, the intermediate court held that for UR procedures occurring in the future, when an employer, insurer or an employee requests UR, non-treating providers, such as pharmacies, must be afforded notice and an opportunity to establish their right to intervene in the UR proceedings. *Keystone Rx LLC v. Bureau of Workers' Comp. Fee Review Hearing Office (Compservices Inc.)*, 223 A.3d 295, 299 (Pa. Cmwlth. 2019) ("*Keystone Rx*"). While we affirm the Commonwealth Court's result, we respectfully reject its prospective holding that non-treating healthcare providers must be given notice and an opportunity to intervene in UR proceedings.

By way of a statutory background, Section 306(f.1)(1)(i) of the Workers' Compensation Act ("Act") requires employers and their insurers to pay the costs of "reasonable surgical and medical services, . . . medicines[,] and supplies as and when needed" for work injuries sustained by their employees. 77 P.S. § 531(1)(i). The Act provides that disputes regarding the "reasonableness or necessity of treatment by a health care provider" shall be resolved by a UR, *i.e.*, utilization review, "at the request of an employe, employer, or insurer." 77 P.S. § 531(6)(i). URs are conducted by health care providers "licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review." 77 P.S. § 531(6)(i).[1]

---

[1] This subsection of the Act states as follows:

> Except in those cases in which a workers' compensation judge asks for an opinion from peer review under Section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

If a treating "provider, employer, employe or insurer" disagrees with the result of the UR, a petition for review must be filed. *See* 77 P.S. § 531(6)(iv) (explaining that in disputes as to reasonableness or necessity of treatment, if "the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report"). The Act dictates that, after a petition for review is filed by one of these parties, a workers' compensation judge ("WCJ") must hold a hearing at which the WCJ may make recommendations that will control only if all parties agree that the WCJ's recommendations will be binding. 77 P.S. § 711.1. The Act does not permit non-treating providers that deliver services in conjunction with a claimant's medical treatment, such as pharmacies, to participate in the UR process. The Act, however, contains a fee review process that allows these non-treating entities to dispute "the amount or timeliness of the payment from the employer or insurer." 77 P.S. § 531(5).[2]

---

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

77 P.S. § 531(6)(i).

[2] This subsection of the Act states as follows:

The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment

Turning to the factual background of this case, Thomas Shaw ("Claimant"), an employee of the Roman Catholic Archdiocese of Philadelphia ("Employer"), suffered a workplace-related left knee injury in 2014.[3] Claimant sought and received medical care from a physician, Dr. Bradley Ferrara ("Physician"), including prescriptions for medications starting in April of 2015 and continuing until at least April of 2017. Keystone Rx LLC ("Pharmacy") dispensed the medications to Claimant and billed Employer's insurer, Compservices/AmeriHealth Casualty Services ("Insurer").

Insurer filed a UR request in 2017 regarding medical treatment, including medications prescribed by Physician and dispensed by Pharmacy, that Shaw received after November 2, 2016. Because Pharmacy was not a treating provider for purposes of the UR procedures of the Act, it was not a party to the UR process. The result of the UR was a determination that all treatment rendered by Physician after November 2, 2016, including the prescribed medications that Pharmacy dispensed to Claimant, was unreasonable and unnecessary because it was unrelated to Claimant's workplace injury. Claimant filed two petitions to review the UR determination, but those petitions were later withdrawn pursuant to a Compromise and Release ("C&R") Agreement that resolved Claimant's then-pending claims but left open whether he could receive future medical

---

must be made timely for any treatment or portion thereof not in dispute. **A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.** If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.

77 P.S. § 531(5) (emphasis added).

[3] Employer is not a party to this appeal.

coverage for his workplace injury. This outcome meant that Insurer was not required to pay Pharmacy under the Act for the aforementioned medications that Pharmacy provided to Claimant.

Pharmacy then filed the two applications for fee review that are at issue in this appeal. The Medical Fee Review Section of the Department of Labor and Industry ("Fee Review Section") held a hearing on the applications, after which it concluded that Insurer owed Pharmacy over $4,000 for providing Claimant the medications at issue in this case. Insurer sought and was granted a hearing to contest this conclusion, as it believed that any need for these medications was unrelated to Claimant's work injury because the medications were found to be unreasonable and unnecessary for treatment of Claimant's work-related injury during the UR process.

After a hearing, Hearing Office ruled in favor of Insurer by vacating the previously entered administrative determinations and dismissing Pharmacy's applications for fee review. The Hearing Office concluded that Insurer met "its burden of proving that the medications prescribed by [Physician] had been classified as unreasonable and unnecessary treatment via the Utilization Review process." Petition for Review, 10/15/2018, Exhibit A, at 13. In reaching this conclusion, the Hearing Office explained that Pharmacy did not have standing in a fee review procedure to challenge the UR determination that the medications prescribed by Physician were unreasonable and unnecessary. The Hearing Office also rejected Pharmacy's argument that the Commonwealth Court's decision in *Armour Pharmacy v. Bureau of Workers' Compensation Fee Review Hearing Office (National Fire Insurance Company of Hartford)*, 192 A.3d 304 (Pa. Cmwlth. 2018) ("*Armour*"), a case we discuss in more detail *infra*, holds that non-treating providers may not be deprived of compensation in the workers' compensation setting without receiving due process.

Pharmacy then filed a petition for review in the Commonwealth Court, where Pharmacy relied upon *Armour* for the proposition that non-treating providers are entitled to payment from a workers' compensation carrier for prescriptions issued at the request of a treating provider unless that entitlement is removed by a procedure, such as UR, that provides it due process protections. Pharmacy argued that pursuant to *Armour*, its due process rights were violated because the Act does not allow non-treating providers to participate in the UR process, even though UR determinations are binding on them.

Because the Commonwealth Court's decision in this matter requires an understanding of that court's opinion in *Armour*, we pause to summarize that decision. In *Armour*, an employer was required to provide medical treatment pursuant to the Act for its employee's work-related injury. A physician prescribed medication to treat the injury, and a pharmacy dispensed the medication; however, the employer refused to pay the pharmacy for the medication and requested UR, claiming that the medication prescribed by the physician was not necessary to treat the employee's work-related injury. At the conclusion of the UR, the medication was found to be reasonable and necessary to treat the employee's injury. Subsequently, because the employer continued to fail to pay for the treatment, the pharmacy that dispensed the medication filed a fee review application, seeking payment from the employer for the medication.

The Fee Review Section concluded that, based on the UR determination, the employer was required to pay the pharmacy for the medication. Thereafter, the employer requested a hearing with the Hearing Office to contest that determination. After the employer sought this review, the employer and the claimant entered into negotiations outside of the UR and fee review processes, leading to their execution of a release agreement that explicitly relieved the employer of any liability for the prescription. The employer then pursued its challenge to the Fee Review Section's determination, arguing to the Hearing Office that the release agreement between it and the claimant should

control whether it owed the pharmacy for the medication. The Hearing Office agreed with the employer and vacated the Fee Review Section's determination.

The pharmacy appealed to the Commonwealth Court, contending that its due process rights were violated because it was deprived of its right to payment based on an agreement: (1) releasing the employer of its obligations imposed during the UR and fee review proceedings; (2) that was reached outside of the UR and fee review proceedings; (3) and to which the pharmacy was not a party. The Commonwealth Court in *Armour* concluded that an agreement between an employer and claimant, reached after a UR determination that medications dispensed by a pharmacy were reasonable and necessary, but outside of the UR and fee review processes, could not be used to set aside a fee review determination that an employer was obligated to pay a pharmacy where the pharmacy was not a party to the agreement. The court held that, as a matter of due process, the parties to a subsequent agreement regarding liability "can bind each other, but they cannot release themselves from liability to a person who is not a party to the [agreement] and who has been given neither notice nor opportunity to be heard on the [agreement]." *Armour*, 192 A.3d at 312. Accordingly, the court vacated the Hearing Office's determination and remanded for further proceedings.

Turning back to the instant matter, in a published opinion, the Commonwealth Court affirmed the Hearing Office's order, holding that Pharmacy was not entitled to payment. *Keystone Rx*, *supra*. In so doing, the court reasoned that *Armour* was distinguishable from the present matter. The court emphasized that, unlike the instant case, *Armour* was based on an agreement between the employer and claimant that was created outside of the UR and fee review processes. Further, the intermediate court noted that the result of the UR proceeding in *Armour* was a determination that the treatment received by the claimant was reasonable and necessary; whereas here, a determination was made that the treatment was unreasonable and unnecessary.

Consistent with this reasoning, the court concluded that, because the UR resulted in a determination that the medications prescribed by Physician were unreasonable and unnecessary, the Hearing Office correctly concluded that it could not address in the fee review setting Pharmacy's attack on "the facial validity of the UR process[.]" *Keystone Rx*, 223 A.3d at 299. The court, however, did not end its analysis there.

Instead, the Commonwealth Court then purported to "acknowledge that there are due process issues for [non-treating] providers such as Pharmacy that are precluded from participating in the UR process but nonetheless are bound by the results that follow them to the fee review process at issue herein." *Id.* Based upon its assessment that "the polestar of *Armour* [] is that the Act must be construed in accordance with due process of law[,]" the court further held that "for UR procedures occurring after the date of this opinion where an employer, insurer, or an employee requests UR, a provider which is not a 'health care provider' as defined in the Act, such as a pharmacy, testing facility or provider of medical supplies, must be afforded notice and an opportunity to establish a right to intervene under the usual standards for allowing intervention." *Id.*

Insurer sought reargument with the Commonwealth Court, and the court denied the request. Insurer then filed in this Court a petition for allowance of appeal, which we granted, limited to the following questions as phrased by Insurer:

(1) Did the Commonwealth Court exceed the scope of its authority and substitute its judgment for that of the Pennsylvania Legislature when it promulgated a new rule which mandates non-healthcare providers are entities with standing and the right to intervene in the Workers' Compensation Act's Utilization Review process?

(2) Did the Commonwealth Court err when it gave non-healthcare providers via the right to void at any time, a Utilization Review Determination regarding the reasonableness and necessity of the care of the physician who wrote the prescription which led to the non-healthcare provider providing a good or service to the injured worker?

*Keystone Rx LLC v. Bureau of Workers' Comp. Fee Review Hearing Office*, 238 A.3d 338, 339 (Pa. 2020). Hearing Office also sought allowance of appeal, which we granted to address the following issue, as phrased by Hearing Office:

> Whether the Commonwealth Court violated the separation of powers doctrine by engrafting a new requirement onto the Pennsylvania Workers' Compensation Act's process for conducting utilization review of treatment by a health care provider by prospectively directing that non-treating entities be given notice and an opportunity to intervene in utilization reviews?

*Id.*

Notably, the Commonwealth Court's unconventional, prospective holding raises a number of potential questions, as evidenced by the above-quoted issues and the parties' various arguments to this Court. To provide a concise analysis regarding the propriety of the Commonwealth Court's reasoning, we find it necessary to characterize the nature of the court's ruling. It appears that, for all intents and purposes, the Commonwealth Court deemed the Act unconstitutional insomuch as it allegedly deprives non-treating providers of due process in UR proceedings. To remedy this perceived infirmity, the court engrafted onto the Act a requirement that non-treating providers must receive notice of and an opportunity to intervene in UR proceedings. We, therefore, will summarize the parties' arguments that align with this understanding of the Commonwealth Court's holding.[4]

Insurer highlights that the Act is an administrative scheme that the Legislature promulgated for the purposes of providing compensation for employees who are injured in the course of their employment and effectuating a workable cost containment system. Insurer maintains that guaranteeing that non-treating providers, such as pharmacies, are paid for filling prescriptions and similar actions does not further either of those purposes. Indeed, Insurer contends that the Act clearly limits non-treating providers who are

---

[4] Consideration of the constitutionality of a statute presents a question of law; accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Ludwig*, 874 A.2d 623, 628 n.5 (Pa. 2005).

concerned about payments to fee review proceedings where they may dispute only the "amount or timeliness of the payment from the employer or insurer." 77 P.S. § 531(5). Insurer stresses that the Legislature made these policy decisions and that courts should not disturb these legislative prerogatives.

In addition, Insurer insists that the manner in which the Commonwealth Court decided this case exemplifies that court's recent (alleged) distortion of the Act and its purpose. Specific to this appeal, Insurer contends that the due-process-based rule announced by the court upends 20 years of settled understanding of the function of URs. Insurer warns that, because the court's newly-minted rule entitles non-treating providers to notice and an opportunity to intervene in URs, it necessarily follows that any UR performed without such a providers' participation could be deemed invalid. In Insurer's view, the Commonwealth Court's ruling poses serious threats to the stability of the workers' compensation system. For these reasons, Insurer asks the Court to disavow the Commonwealth Court's prospective holding.

Along the same lines as Insurer's argument, Hearing Office contends that the Legislature created the UR process for the purpose of determining whether a particular medical treatment was reasonable and necessary and that the Legislature deliberately excluded non-treating providers from URs because they do not make any treatment decisions. Hearing Office suggests that the Commonwealth Court strayed from this straightforward reading of the Act and improperly usurped the role of the Legislature in reaching its prospective holding. Hearing Office reminds us that this Court recently reiterated the settled concept that "[i]t is axiomatic that [courts] may not add statutory language where [they] find the extant language somehow lacking[.]"[5] Hearing Office's Brief at 14 (quoting *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020)).

_____

[5] In any event, Hearing Office opines that the court's decision to violate the separation of powers in this regard was unwise because the dispensing of services or goods that are

Of significant importance to this appeal, Hearing Office avers that non-treating providers have no recognized property interest as of the time of a UR proceeding because "there is no property interest in payment of the disputed bill before there is a determination that the medical bills are reasonable and necessary." *Id.* at 19 (citing *American Manufacturers Mutual Ins. v. Sullivan*, 526 U.S. 40, 60 (1999)). In this regard, Hearing Office highlights the High Court's holding in *Sullivan* that the Pennsylvania workers' compensation claimants in that case lacked a property interest that would implicate due process until UR proceedings were completed and resulted in a determination that the treatment at issue was reasonable and necessary.

Hearing Office argues that rather than a property interest, Pharmacy has a "mere expectation" of payment until a UR proceeding results in a determination that a given medical treatment is reasonable and necessary. *Id.* at 19 (quoting *Miller v. WCAB (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007)). Accordingly, Hearing Office reasons, Pharmacy has not set forth a viable due process claim, and the Commonwealth Court, therefore, violated key separation of powers principles by adding notice and right to intervene elements to the Act for non-treating providers.[6]

---

consistent with a physician's prescription or order, such as Pharmacy's provision of medication prescribed by Physician in this case, has no bearing on the UR process of determining the reasonableness or necessity of the treatment prescribed by the physician. Hearing Office's Brief at 18.

[6] The following parties filed *amicus curiae* briefs in support of Insurer and Home Office: Coalition Against Insurance Fraud; Laundry Owners Mutual Liability Insurance Association; United Parcel Service; Pennsylvania Chamber of Business and Industry; Insurance Federation of Pennsylvania; American Property Casualty Insurance Association; and National Association of Mutual Insurance Companies.

Each of the *amicus* briefs is similarly structured. They argue that the Commonwealth Court improperly engaged in judicial lawmaking that will lead to severe consequences, such as opening the door to further abuse of a system already plagued by mark-ups of medicines and medical supplies, over prescription, and fraudulent billing practices. *Amici* also emphasize that the Commonwealth Court's new rule will create uncertainty amongst all interested parties, as, *inter alia*, the court used imprecise

Responding to Insurer's arguments, Pharmacy continually refers to its "right to compensation" at the UR phase of workers' compensation proceedings; yet, Pharmacy fails to elaborate adequately on the genesis of that right. Further, Pharmacy insists that the Commonwealth Court did not determine that the UR or fee review provisions of the Act are unconstitutional. Instead, without providing any citation to the Commonwealth Court's opinion and employing a strained interpretation of the Act and its regulations, Pharmacy asserts that the court found the regulations promulgated by the Bureau of Workers' Compensation to be unconstitutional because those regulations deprive due process to non-treating providers by failing to afford them a means to establish their alleged right to payment for services rendered.[7]

Regarding Hearing Office's issue and arguments, Pharmacy observes that non-treating providers have no role in UR proceedings; yet, their right to compensation is entirely dependent on whether the prescriptions they fill are deemed reasonable and necessary during UR proceedings. Pharmacy maintains that because it has an interest in receiving payment for its services, where the UR regulations authorize review of services of non-treating providers, UR regulations "must also allow those non-treating providers to have notice and a right to participate, just as they do for treatment provided by a healthcare provider." Pharmacy's Brief at 31. Pharmacy argues that the UR regulations are constitutionally repugnant for violating due process, and thus, the Commonwealth Court did not violate separation of powers principles by interpreting the Act in a way that vindicates non-treating providers' right to due process.

---

language regarding whose due process rights entitle them to notice and a right to intervene, which will lead to protracted appellate litigation.

[7] In reality, the Commonwealth Court made direct reference to a Bureau regulation in its opinion only once in a footnote. *Keystone Rx*, 223 A.3d at 297 n.4. The court made this lone reference to underscore that both the Act and its regulations allow only employees, employers, and insurers to request UR.

Regarding the United States Supreme Court's holding in *Sullivan*, Pharmacy suggests that *Sullivan* concerned the due process rights of treating providers, who are clearly part of UR proceedings. Pharmacy emphasizes that it had no right to participate in UR proceedings, distinguishing this case from *Sullivan*. For these reasons, Pharmacy believes that this Court should uphold the Commonwealth Court's decision.

To the extent that the Commonwealth Court deemed the Act to be unconstitutional, we note that every piece of legislation passed by the General Assembly enjoys the strong presumption that it is constitutional. *Pennsylvania State Ass'n of Jury Comm'rs v. Com.*, 64 A.3d 611, 618 (Pa. 2013). Thus, "a party challenging the constitutionality of a statute bears a very heavy burden of persuasion." *Stilp v. Com.*, 905 A.2d 918, 939 (Pa. 2006). Indeed, a court will not deem a legislative enactment unconstitutional unless it clearly, palpably, and plainly violates the Constitution. *Id.* "If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional." *Pennsylvania State Ass'n of Jury Comm'rs*, 64 A.3d at 618.

The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST., amend. XIV. The first inquiry in every due process challenge is whether the [complaining party] has been deprived of a protected interest in 'property' or 'liberty.'" *Sullivan*, 526 U.S. at 59. Here, the Commonwealth Court seemingly found that the Act fails to provide non-treating providers with sufficient process to defend their alleged protected property interest in receiving payment pursuant to the Act. Indeed, the Commonwealth Court, in effect, found the Act to be constitutionally deficient because it does not afford non-treating providers with appropriate procedural due process, the fundamental hallmarks of which are notice and an opportunity to be heard. *See Friends*

*of Danny DeVito v. Wolf*, 227 A.3d 872, 896 n.16 (Pa. 2020) (describing the hallmarks of procedural due process).[8]  For the reasons that follow, we respectfully disagree.

In so doing, we first observe that the Act clearly and unambiguously provides that employers and insurers are obligated to pay providers, such as Pharmacy, for reasonable and necessary treatment or services connected to claimants' work-related injuries.  77 P.S. § 531(1)(i) ("The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed."); *id.* at § 531(5) ("The employer or insurer shall make payment . . . in accordance with the provisions of this section.").  Indeed, the Act mandates that employers or insurers pay providers within 30 days of the receipt of bills; however, that obligation is, at least temporarily, eliminated if employers or insurers dispute the reasonableness or necessity of the treatment at issue. *Id.* ("All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6)[, which addressed UR].").  In other words, if an employer or insurer triggers the UR mechanism for challenging the reasonableness or necessity of treatment, then the employer or insurer is not obligated to pay for the treatment unless the UR results in a determination that the treatment at issue was reasonable and necessary.

---

[8] To the extent that we must interpret the Act in this appeal, that task is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991.  Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention.  1 Pa.C.S. § 1921(a).  When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

Thus, when a non-treating provider bills an insurer and the insurer invokes the UR process, the non-treating provider is not entitled to payment under the Act. Further, if the UR results in a determination that the treatment at issue is unreasonable or unnecessary, the employer and insurer are not liable under the Act to pay for the treatment. *See Sullivan*, 526 U.S. at 60 (citing, *inter alia*, 77 P.S. § 531(1)(i) and opining that the Act "expressly limits an employee's entitlement to 'reasonable' and 'necessary' medical treatment, and requires that disputes over the reasonableness and necessity of particular treatment must be resolved *before* an employer's obligation to pay—and an employee's entitlement to benefits—arise.")[9] (emphasis in original). On the other hand, if a UR results in a conclusion that the treatment was reasonable and necessary, then the non-treating provider is entitled to payment under the Act and has the fee review process to litigate the amount or timeliness of the payment from the employer or insurer.

Accordingly, when, as here, an insurer successfully challenges a treatment, the Act makes clear that a non-treating provider does not have a constitutionally-protected property interest in goods or services that it dispensed, as these providers were never entitled to payment under the Act; rather, they simply have an expectation of payment in the normal course. Absent a constitutionally protected property interest, there is no viable due process claim. Thus, the Commonwealth Court erred by concluding that the Act improperly fails to account for the due process rights of non-treating providers in UR proceedings and by engrafting onto the Act a requirement that non-treating providers receive notice of and an opportunity to intervene in UR proceedings. We, therefore, reject that portion of the court's opinion but otherwise affirm the court's order.[10]

---

[9] Any issue concerning other remedies possibly available to non-treating providers to collect for goods or services rendered is not currently before the Court.

[10] Given our conclusion, we need not address the Commonwealth Court's decision in *Armour*. We nonetheless note that we are satisfied with the manner in which the Commonwealth Court distinguished the instant matter from the circumstances underlying *Armour*. *See*, *supra*, at 7.

Justices Saylor, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion in which Justice Dougherty joins.